# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRACE INDUS. CONTRACTING, INC. and PETERSON INDUS. SCAFFOLDING, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 11189-VCG |
| PETERSON ENTERS., INC., RONALD A. PETERSON, ERIC PETERSON, KIRK PETERSON, RONALD A. PETERSON REVOCABLE TRUST, RONALD A. PETERSON 2010 IRREVOCABLE TRUST, and VERNON L. GOEDECKE COMPANY, INC., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

WHEREAS, the Plaintiffs and the Defendants having moved for attorney's fees,

AND NOW, this 12th day of December, 2018:

1) This litigation involved the sale of a business unit from one scaffolding company, Peterson Enterprises, to another, Brace Industries;

2) That sale was pursuant to a Sales Purchase Agreement (SPA);

3) The litigation came before this Court on the Plaintiffs' request for a preliminary injunction to enforce a restrictive covenant. I entered a preliminary injunction on behalf of the Plaintiffs, improvidently.

Eventually, the Defendants were entitled to a recovery from the injunction bond;

4) The litigation ultimately proceeded to trial, on what the Plaintiff characterizes as three categories of claims: claims for missing inventory under the SPA, claims involving the restrictive covenant, and claims for customer payments made to the Defendants to which the Plaintiffs were entitled. The Defendants were successful in defending the restrictive covenant claims, and for certain offsets raised as affirmative defenses. The Plaintiffs generally prevailed in the litigation.[1] This litigation was vigorously contested, factually dense, and prolonged. It generated substantial costs, including expert witness expenses, as well as large legal fees;

5) The Plaintiffs are entitled to their costs, in the amount of $440,149, under the Court of Chancery Rule 54(d);

6) Both sides seek to shift fees under the bad-faith exception to the American Rule on attorney's fees. I have carefully considered the arguments submitted. It is true that the litigation tactics on both sides were zealous and, perhaps, ultimately disproportionate to the amounts at issue; however,

---

[1] See my October 31, 2016 Memorandum Opinion and my June 19, 2017 and July 10, 2018 Letter Opinions.

I find shifting fees inequitable and unwarranted in favor of any party because I find no bad faith. In particular, I reject the Plaintiffs' argument that the Defendants' withholding of contractual payments, in the circumstances here, was improper self-help justifying fee shifting, as well as the Defendants' argument that the Plaintiffs' restrictive covenant claims were meritless;

7) The Defendants seek to shift fees incurred in achieving set-offs from the Plaintiffs' claims. They point out that SPA Section 6.3 provides the Defendants with indemnification for any losses incurred for breaches of covenants under the SPA, including reasonable attorney's fees, and that the cost of proving entitlements to the set-offs was a loss involving breach of covenant, triggering the right to fees. Specifically, the Defendants contend that the "Plaintiffs refused to honor their obligations to Defendants under the 'Further Assurances' provision of the SPA § 5.7 and under the TSA . . . Plaintiffs thereby 'breached' an 'agreement' or 'obligation to be performed by Buyer pursuant to this Agreement' per SPA § 6.3(c)."[2] Nevertheless, the Defendants fail to demonstrate breach of any of those provisions. The Plaintiffs' good faith inventory claims, many of which they prevailed on, do not amount to a breach of covenant for which the

---

[2] Defs.' Reply in Support of their Pet'n for Attorney's Fees, at 2.

3

parties to the SPA agreed to provide indemnification, and defense of those claims does not entitle the Defendants to fee shifting;

8) The Plaintiffs also seek to shift fees contractually. They point to Section 6.2 of the SPA, which provides for indemnification for losses, including reasonable attorney's fees, for breaches of the SPA. The cost of successful litigation concerning failure to deliver inventory under the SPA is covered by the indemnification provisions of Section 6.2. Accordingly, the Plaintiffs are entitled to their reasonable legal fees incurred in prosecuting the inventory claim. The Plaintiffs seek fees of $1.3 million for this claim. That, I note, is their entire legal expenditure in this litigation, including claims not indemnified as well as claims they lost. The Plaintiffs make no attempt to provide a break-out of fees for the inventory claims, stating (in response to the Defendants' opposition on this ground) that they have no responsibility to do so.

9) The right to fees on the inventory claim, as indemnification under Section 6.2, is limited to a reasonable fee. Our case law provides that in exercising my discretion to set a legal fee due contractually,[3] I must consider the factors set out at Rule 1.5(a) of the Rules of Professional Conduct:

---

[3] *See Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242 (Del. 2007).

4

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.[4]

10) Examining these factors, I note that this was a contract case of no novelty; that the litigation certainly prevented the attorneys from spending time on other remunerative work, a factor mitigated by the fact that the fee was not contingent; that the hourly fee was reasonable but that I am unable to assess the time spent on compensable matters due to the Plaintiffs' failure to segregate non-compensable hours; that this matter has been unduly protracted due to vigorous litigation on both sides; and that Plaintiffs have indicated that this is their first engagement of this counsel;

11) The remaining Rule 1.5 factor is the amount involved and the results obtained. For purpose of fee shifting, the result obtained is a necessary

---

[4] Del. Lawyers' Rules of Prof. Conduct 1.5(a).

reference for setting a reasonable fee. The amount of inventory for which the Plaintiffs were entitled to compensation had a value of $725,059. Even under a contingency fee of one-third of any recovery, that implies a fee of $241,686. I find that to be the upper limit of a reasonable fee for the inventory claims, which, again, were not contingent on recovery. Awarding the Plaintiffs the amount they seek in fees, nearly $1.3 Million, would be unjustified in light of the amount recovered (as the Plaintiffs themselves point out in their opposition to the Defendants' similarly-disproportionate fee claims). In light of the fees expended by the Plaintiffs, the amount recovered, and the other Rule 1.5 factors, I awarded $241,686 as the contractually-reasonable fee.

12) The Plaintiffs are entitled to fees and costs in the amount of $681,835. The Defendants are not entitled to fees.

**IT IS SO ORDERED.**

/s/ Sam Glasscock III

Vice Chancellor